**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| COMMON CAUSE INDIANA; ) | |
| NATIONAL ASSOCIATION for the ) | |
| ADVANCEMENT OF COLORED PEOPLE, ) | |
| by its Greater Indianapolis Branch 3053 ) | |
| and on behalf of its individual members; ) | |
| DORIS A. McDOUGAL; and ) | |
| JOHN WINDLE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CAUSE NO. 1:17-CV-1388-SEB-TAB |
| v. ) | |
| ) | |
| MARION COUNTY ELECTION BOARD; ) | |
| KEITH JOHNSON, MAURA HOFF, and ) | |
| MYLA A. ELDRIDGE, each in their official ) | |
| capacities as members of the MARION ) | |
| COUNTY ELECTION BOARD, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants, Marion County Election Board and Keith Johnson, Maura Hoff, and Myla A. Eldridge, each in their official capacities as members of the Marion County Election Board, by their counsel ("MCEB Defendants"), Answer the Complaint for Declaratory and Injunctive Relief ("Complaint") of the Plaintiffs, Common Cause of Indiana and National Association for the Advancement of Colored People ("Plaintiffs"), as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a) (3), and 1357, and 42 U.S.C. §§ 1983 and 1988, and Plaintiffs' claim under the

Indiana Constitution pursuant to 28 U.S.C. § 1367(a) because it is part of the same case and is based on the same facts, statutes and circumstances as the federal claims.

**ANSWER: MCEB Defendants deny that 28 U.S.C. § 1357 provides the Court with jurisdiction to hear Plaintiffs' claims, but admit the remainder of the allegations of paragraph 1 of the Complaint.**

2.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:  MCEB Defendants admit the allegations of paragraph 2 of the Complaint.**

3.     Venue in this district is proper under 28 U.S.C. § 1391 (b) because all of the events or omissions giving rise to the claims occurred in this judicial district.

**ANSWER: MCEB Defendants admit the allegations of paragraph 3 of the Complaint.**

## PARTIES

4.     Plaintiff Common Cause Indiana has long worked to expand voter registration and the equal access to voting. Common Cause Indiana has approximately 2,500 members who live and vote in Marion County, many of whom desire to and would take advantage of early voting opportunities because of work, family and/or school obligations but for the refusal of Defendants as alleged herein to remove the substantial burdens imposed upon Marion County voters who desire to take advantage of the statutory right to cast an early in-person absentee ballot. Its members thus have been injured in fact by Defendants' actions and inactions, and they could have brought suit in their own right.

2

US.113024124.01

**ANSWER:  MCEB Defendants admit that they are aware that Common Cause Indiana has worked to expand voter registration and the equal access to voting in Marion County, but otherwise lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in paragraph 4 of the Complaint.**

5.      Common Cause Indiana has organizational standing to bring this suit because the MCEB's refusal to authorize satellite voting has forced and will continue to force Common Cause Indiana to devote resources to getting its members to the polls on Election Day who, but for the MCEB's actions and inactions in failing to authorize satellite locations for early voting and the burdens associated with not having more than a single location for early voting in Marion County, would otherwise have cast an early in-person absentee ballot.

**ANSWER:  MCEB Defendants admit that Common Cause has organizational standing to bring this suit, but otherwise lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in paragraph 5 of the Complaint.**

6.      Plaintiff National Association for the Advancement of Colored People, by its Greater Indianapolis Branch 3053 ("NAACP"), was established in 1912 as a not-for-profit organization of citizens of Indianapolis whose purpose was and remains that of assisting African-American citizens to achieve equality and gain rights guaranteed them under the United States Constitution. In the 1920s it took the lead in resisting the growing threats of segregation and of the Ku Klux Klan. Throughout its history the Indianapolis NAACP Branch has led and continues to lead the fight for civil rights, voting rights and economic justice for African-American residents of Indianapolis and Marion County. Currently the Indianapolis NAACP branch has approximately seven hundred (700) members, nearly all of whom are regular voters who are active in all aspects of the political process in Marion County, and many of whom would cast an

3

early in-person absentee ballot rather than waiting to vote until Election Day if early voting were more readily available and less burdensome. Its members have thus suffered an injury in fact as a result of the Defendants' actions and inactions as alleged herein, and they could have brought this suit in their own right.

**ANSWER:  MCEB Defendants admit based on its information and belief that Plaintiff National Association for the Advancement of Colored People, by its Greater Indianapolis Branch 3053 ("NAACP") is a non-for-profit organization and that it has promoted civil rights and voting rights for African-American residents of Indianapolis and Marion County, but otherwise lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in paragraph 6 of the Complaint.**

7.      Plaintiff, John Windle, is a resident of and registered voter in Lawrence Township, Marion County, who is a member of Common Cause Indiana. He is a full-time employee of the United States Postal Service. Because he works until 6:00 p.m., it is important for him to vote prior to Election Day to avoid the risk of losing his opportunity to vote as a result of unforeseen family or work emergencies on Election Day. In 2008 he voted early at the satellite voting center located at North Central High School.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 7 of the Complaint.**

8.      Plaintiff, Doris A. McDougal, is an African-American citizen who resides in Washington Township, Marion County, who is a member of the NAACP. Ms. McDougal was born in 1948. She lives alone and has difficulty ambulating due to her age and state of health. She uses a cane as an assistive device when walking. She is employed by Ivy Tech as an academic advisor, working from 11:00 a.m. until 9:00 p.m. five (5) days a week. Ms. McDougal

4

is also the primary caregiver of her 95-year old mother who resides in Rushville, Indiana. She also has served as secretary of the Indiana NAACP and in that capacity, as well as from her own experiences, is a fervent believer in the importance of the right to vote and is well acquainted with the difficulties and burdens many African Americans in Marion County face when seeking to cast an early in-person absentee ballot.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 8 of the Complaint**

9.      Defendant Keith Johnson, Maura Hoff and Myla A. Eldridge are members of the Marion County Election Board ("MCEB"), which is comprised of the circuit court clerk and two persons appointed by the circuit court clerk, one (1) from each of the major political parties. Ind. Code § 3-6-5-2. Eldridge is the Marion Circuit Court Clerk, the Democratic Party's member of the MCEB is Keith Johnson, and the Republican Party's member is Maura J. Hoff. Each is sued in his or her official capacity.

**ANSWER: MCEB Defendants admit the allegations in paragraph 9 of the Complaint.**

10.      Hoff's refusal to approve resolutions to establish early satellite voting locations in 2016, together with similar decisions of her Republican predecessors in 2010, 2012, and 2014, has resulted in no satellite voting locations being approved for use in Marion County in every federal election cycle this decade due to the unanimity requirement of I. C. § 3-11-10-26.3.

US.113024124.01

**ANSWER: MCEB Defendants admit the allegations in paragraph 10 of the Complaint.**

11.     Defendant Connie Lawson is the Indiana Secretary of State and in that capacity is the chief election official of the State of Indiana. I.C. § 3-6-3.7-1. She is also charged with performing all ministerial duties related to the administration of elections by the State. I.C. § 3-6-4.2-2(a). Lawson is sued in her official capacity.

**ANSWER: MCEB Defendants admit that Connie Lawson is the Indiana Secretary of State and that in that capacity serves as chief election official of the State of Indiana as defined by Ind. Code § 3-6-3.7-1 and is charged with performing ministerial duties related to the administration of elections by the State as defined by Ind. Code § 3-6-4.2-2(a), but otherwise deny that Lawson is a party to this lawsuit given Plaintiffs' Notice of Voluntary Dismissal without Prejudice of Defendant Connie Lawson filed June 13, 2017.**

## FACTUAL ALLEGATIONS

12.     I.C. § 3-11-10-26 provides that a voter is legally entitled to cast an absentee ballot before an absentee voter board at the office of the circuit court clerk or at a satellite office established under I. C. § 3-11-10-26.3. A voter may vote before an absentee voter board not more than twenty-eight (28) days nor later than noon on the day before Election Day and, except for counties with a population of less than twenty thousand (20,000), the absentee voter board must permit voters to cast absentee ballots at the office of the circuit court clerk for at least seven (7) hours on each of the two (2) Saturdays preceding election day. I. C. § 3-11-10-26 (e), (g) and (h).

**ANSWER: MCEB Defendants state that the Indiana Code sections alleged in paragraph 12 of the Complaint speak for themselves.**

13.     I.C. § 3-11-10-26.3 provides that a county election board may adopt a resolution to authorize the circuit court clerk to establish satellite offices in the county where voters may cast in-person absentee ballots before an absentee voter board. That statute requires that the resolution be adopted by a unanimous rather than majority vote of the board's entire membership. The statute provides no guidelines, standards or factors for the members of a county election board to use in deciding whether or not to approve such a resolution and thus leaves the decision to the unfettered discretion of partisan-appointed members of county election boards.

**ANSWER: MCEB Defendants state that the Indiana Code section alleged in paragraph 13 of the Complaint speaks for itself.**

14.     The MCEB has a brief history of approving satellite locations for early in-person voting.

**ANSWER:  MCEB Defendants admit that MCEB has previously approved satellite locations for early in-person voting.**

15.     In 2008, the MCEB approved a resolution to establish satellite voting sites in an effort to create opportunities for Marion County voters to vote in person prior to election day at locations in addition to the circuit court clerk's office in the City-County Building. That resolution approved satellite voting sites at North Central High School in Washington Township, and another at Southport Community Center in Perry Township

US.113024124.01

**ANSWER: MCEB Defendants admit the allegations in paragraph 15 of the Complaint.**

16.     The establishment of those satellite sites proved to be a huge success and was extremely popular. As a result of the greater access and convenience those satellite sites offered to Marion County voters, during the 2008 general election 73,549 voters in Marion County cast early absentee votes, representing 19.3% of all Marion County citizens who voted in the 2008 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations that the satellite sites "proved to be a huge success and was extremely" popular from Plaintiffs' perspective, but Defendant Eldridge possesses first-hand knowledge regarding the operation of those sites and believes the sites were a huge success and extremely popular.  MCEB Defendants further state that during the 2008 general election 73,549 voters in Marion County cast early <u>in-person</u> votes, but otherwise admit the remaining allegations in paragraph 16 of the Complaint.**

17.     Beginning in 2010 and continuing to date the MCEB ceased approving satellite voting sites for use in federal elections. In every instance resolutions to approve satellite voting sites were rejected by the Republican member of the MCEB, which according to I.C.§ 3-11-10-26.3(b) resulted in their disapproval.

**ANSWER: MCEB Defendants admit the allegations in paragraph 17 of the Complaint.**

18.     Prior to the 2012 federal election, the MCEB considered Resolution 08-12, which would have established two (2) satellite sites, one at the Beech Grove Technology Center and the

other at the Washington Township Trustee's Office. That resolution was defeated despite the support of the other two members of the MCEB after Hoff's predecessor, Patrick Dietrick, cast his vote against it. A similar resolution was rejected in 2014 when Dietrick's successor voted to reject the resolution despite its support from a majority of the MCEB.

**ANSWER: MCEB Defendants admit the allegations in paragraph 18 of the Complaint.**

19.     Prior to the 2016 general election the MCEB considered Resolution 01-16 to establish two (2) satellite voting locations to provide greater convenience, access and opportunity for early voting for Marion County's voters. That resolution failed after Defendant Hoff, without explanation or comment, refused to support it.

**ANSWER: MCEB Defendants deny that Defendant Hoff was obligated to explain or comment on her resolution vote, and admit the allegations in paragraph 19 of the Complaint only to the extent that the resolution failed after the proxy member substituting for Defendant Hoff failed to support it.**

20.     Early absentee voting turnout dropped dramatically after the Republican member began refusing to approve satellite voting locations for early in-person voting. In 2012, only 39,189 voters in Marion County cast absentee in-person votes (10.8% of the total number of votes cast) and in 2016 only 46,995 voters in Marion County cast absentee in-person votes (12.7% of the total votes cast).

US.113024124.01

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations that "[e]arly absentee voting turnout dropped dramatically" as characterized by Plaintiffs, but admit the remaining allegations in paragraph 20 of the Complaint.**

21.     Because of the unanimity requirement of I. C. § 3-11-10-26.3 (b) and the refusal of the Republican-appointed member of the MCEB to approve resolutions authorizing satellite voting locations, Indiana's most populous county, and the one with the largest minority population, has exponentially the highest number of registered voters per early voting location in Indiana.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 21 of the Complaint.**

22.     Marion County had 699,709 registered voters in 2016 but because of the MCEB's refusal to approve satellite voting locations, it had but a single early voting location due to the MCEB's failure this decade to approve a resolution establishing satellite sites for early voting, a ratio of one (1) early voting site to 699,709 registered voters.

**ANSWER: MCEB Defendants state that Marion County had 675,568 registered voters in the 2016 primary election and 715,154 registered voters for the 2016 general election, but otherwise admit the allegations in paragraph 22 of the Complaint.**

23.     By contrast, Hamilton County had 230,786 registered voters in 2016. Its election officials unanimously approved two satellite voting locations in addition to the office of the circuit court clerk, a ratio of one early site for every 76,929 registered voters.

US.113024124.01

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 23 of the Complaint.**

24.     Hendricks County had 109,903 registered voters in 2016. Its election officials approved three (3) satellite voting locations in addition to the office of the circuit court clerk, a ratio of one early voting site for every 27,476 registered voters.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 24 of the Complaint.**

25.     Johnson County had 107,546 registered voters in 2016. Its election officials approved five (5) early voting sites in addition to the office of the circuit court clerk, a ratio of one early voting site for every 17,924 registered voters.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 25 of the Complaint.**

26.     By giving a single member of the MCEB unfettered and standardless discretion to disapprove a resolution establishing satellite sites for early voting, the operation and effect of I.C. § 3-11-10-26.3 arbitrarily, capriciously and without justification treats voters differently based on where they live, and its application in Marion County has resulted and will, unless enjoined by this Court, continue to result in Marion County voters being unnecessarily burdened with regard to their statutory right to cast an early in-person absentee vote.

**ANSWER: MCEB Defendants deny the allegations in paragraph 26 of the Complaint.**

27.     The application of I. C. § 3-11-10-26.3 in Marion County has caused and, unless enjoined by this Court, will continue to cause long lines and wait times for early voting at the

11

office of the circuit court clerk in Indianapolis, as it did during the 2016 election. The MCEB's refusal to approve satellite voting sites has also resulted in a dramatic decrease in the number of voters who cast an early in-person absentee vote in 2012 and 2016 as compared to the numbers of voters who voted early in 2008 when satellite locations were approved and used, which has the further effect of causing a higher percentage of Marion County voters to cast an in-person ballot on Election Day, thus resulting in increased lines and wait times at precinct polling places.

**ANSWER: MCEB Defendants admit that early voters and Election Day voters in Marion County are likely to experience longer lines and wait times than would otherwise exist, but deny the remaining allegations in paragraph 27 of the Complaint.**

28.     Moreover, because Marion County has the highest percentage (28%) of African-Americans in Indiana, and because African-American voters are more likely than other voters to utilize early voting, the MCEB's refusal to approve multiple satellite locations for early in-person absentee voting as permitted by Indiana law has disproportionately resulted in the denial or abridgement of the right of African-American voters to cast an early in-person absentee ballot.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 28 of the Complaint**

29.     The MCEB's refusal to approve satellite locations for early in-person absentee voting has also contributed to the decline in overall voter participation in Marion County. In the 2008 general federal election, 381,759 persons voted in Marion County when satellite sites were approved and used. In 2012 when they were not, that number dropped to 361,278, and in 2016 to 370,498.

US.113024124.01

**ANSWER: MCEB Defendants deny that the MCEB's refusal to approve satellite locations for early in-person absentee voting has contributed to the decline in overall voter participation in Marion County, state that the number of person who voted in the 2012 general election totaled 361,416, but otherwise admit the remaining allegations in paragraph 29 of the Complaint.**

30.     By contrast, voter turnout in each county contiguous to Marion County where satellite sites have been approved has steadily increased. For example, in Hamilton County 130,829 persons voted in the 2008 general election, 138,252 in the 2012 general election, and 158, 205 in the 2016 general election, or 69% of all registered voters in that county. In Hendricks County 65,930 persons voted in the 2008 general election, 67,538 in the 2012 general election, and 77,182 in the 2016 general election, or 70% of all registered voters in that County. That same pattern of increased participation is evident in every other county contiguous to Marion County where satellite voting locations were approved.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 30 of the Complaint.**

31.     The MCEB's refusal to approve satellite locations for early in-person absentee voting burdens the rights of all Marion County voters to exercise their statutory right to cast an early in-person absentee ballot. Because those burdens interact with the ongoing effects of Indiana's history of discrimination against African Americans in housing, education, employment, criminal justice, and other areas, they operate to disproportionately abridge, deny, and disadvantage African-American voters, thus denying them an equal opportunity to participate in the political process.

**ANSWER: MCEB Defendants deny the allegations in paragraph 31 of the Complaint.**

32.     The failure of the MCEB to approve early satellite voting stands in stark contrast to the actions of voting officials in the counties contiguous to Marion County, which are predominantly white.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 32 of the Complaint.**

33.     For example, in Hendricks County, where election officials approved satellite voter locations in Avon, Brownsburg, and Plainfield in addition to early walk-in absentee voting at the Hendricks County Government Center in Danville, 32.3 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 33 of the Complaint.**

34.     In Hamilton County, where election officials approved satellite voting sites for early voting in Carmel and Fishers in addition to early walk-in absentee voting at the Hamilton County Judicial Center in Noblesville, 26.6 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 34 of the Complaint.**

35.     In Johnson County, where election officials approved satellite voting sites for early voting at two locations in Greenwood, one in Edinburgh, one in Trafalgar, and one in Franklin, in addition to early in-person absentee voting at the Johnson County Courthouse in

14

Franklin, 51.6 % of voters cast an early in-person absentee in-person ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 35 of the Complaint.**

36.     In Boone County, where election officials approved satellite sites for early in-person voting, 61.1 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 36 of the Complaint.**

37.     In Hancock County, where election officials approved satellite sites for early in-person voting, 65.1 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 37 of the Complaint.**

38.     In Morgan County, where election officials approved satellite sites for early in-person voting, 44.4 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 38 of the Complaint.**

39.     In the second most populous county in Indiana, Lake County, where election officials approved multiple satellite locations for early voting in East Chicago, Hammond, Schererville, Highland, Gary, Hobart, Munster, St. John and Winfield, in addition to the office of

15

the circuit court clerk in Crown Point, 22.5 % of voters cast an early in-person absentee in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 39 of the Complaint.**

40.     In the third most populous county in Indiana, Allen County, where election officials approved satellite locations for early voting at five (5) locations in Fort Wayne in addition to the office of the Circuit Court Clerk in downtown Fort Wayne, 21.2 % of voters cast an early in-person absentee ballot in the 2016 general election.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 40 of the Complaint.**

41.     Similar patterns were evident in other of Indiana's most populous counties where election officials approved satellite locations to facilitate early voting. For example, in Monroe County 45.2 % of all voters in that county who cast votes in the 2016 general election cast an in-person absentee ballot, in Tippecanoe County 45 % did so, in Vanderburgh County 42 % did so, and in Vigo County 52.3 % did so.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 41 of the Complaint.**

42.     Plaintiff Windle voted early in 2008 and wished to do so again in 2016 because of his concern that his work hours might make it difficult or even impossible for him to vote on Election Day. He made four or five trips to the City-County Building in an attempt to early vote in the 2016 general election. On each occasion he attempted to locate parking in one of the free parking areas provided for voters desiring to vote early at the City-County Building, one being at

16

355 E. Pearl Street, and the other along Delaware Street. On each occasion he was unable to locate a free parking spot. He is aware that other voters who attempted to use the few free parking spots also gave up because they were unable to locate a free parking spot and did not wish to pay exorbitant downtown private parking rates, and/or because of long lines of persons waiting to vote at the City-County Building.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 42 of the Complaint.**

43.     Plaintiff McDougal, because of her work hours, disabilities and responsibilities to care for her mother, also desired to cast an early in-person absentee ballot in the 2016 general election. She made at least two attempts to vote early at the City-County Building in October of 2016, but on each occasion she was unable to find free parking near and thus easily accessible to the west entry to the City-County Building near where early voting was being conducted. She was also deterred by the extremely long lines of voters she observed at the City-County Building waiting to cast an early in-person absentee ballot.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 43 of the Complaint.**

44.     Because of her unsuccessful attempts to vote early at the City-County Building, Ms. McDougal voted in person on November 8, 2016, before going to work. It was raining when she arrived at her polling place at the Friends Church on Kessler Boulevard just south of Glendale Mall at approximately 10:00 a.m. Upon her arrival she observed a very long line of persons waiting in the rain to vote, a line which extended outside the church and snaked around the church parking lot. But for the fact that election officials allowed her to go to the head of the

17

long line of persons waiting to vote, it is unlikely she would have made it to work when her shift began at 11:00 a.m.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 44 of the Complaint.**

45.     Though because of her age she could have voted absentee by mail, Ms. McDougal is highly distrustful of voting by mail because the process is cumbersome and she believes it is less than completely secure, and because she believes that there is less likelihood that her vote will be counted were she to vote by mail due to the lack of any Indiana laws which even require her to be notified if for any reason her mail-in absentee ballot is not counted.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 45 of the Complaint.**

46.     Parking near the City-County Building was particularly problematic in the Fall of 2016 because of the number of new construction sites nearby. For instance, the construction of the new Cummins headquarters just east of the City-County Building significantly impacted the number of parking spaces. Further, voters who attempted to find parking on the Saturday prior to Election Day, November 5, found that the free parking spaces on Pearl and Delaware Streets had been all occupied by runners participating in the Monumental Marathon who had paid for those spots months ago, and by fans downtown to attend an Indiana Pacers basketball game in the evening.

US.113024124.01

**ANSWER: MCEB Defendants admit that the construction of the new Cummins headquarters just east of the City-County Building impacted the number of parking spaces near the City-County Building, but otherwise lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 46 of the Complaint.**

47.     Plaintiffs expect that the MCEB will next consider a resolution to establish satellite sites for early, in-person absentee voting in early 2018, prior to the 2018 federal off-year elections, and based on recent history that such resolution will be defeated by the opposition of Defendant Hoff or her Republican-appointed successor, despite such resolution being supported by the MCEB's other two members.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 47 of the Complaint.**

## COUNT I

## FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION

48.     Plaintiffs restate as if fully set forth herein each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 47 of this Complaint.

**ANSWER: MCEB Defendants restate as if fully set forth herein each and every answer set forth in the foregoing Paragraphs 1 through 47 of this Answer to Complaint for Declaratory And Injunctive Relief.**

49.     Defendants, acting under color of state law, have maintained and are continuing to maintain an unequal system of early voting that unnecessarily and disproportionately burdens Marion County voters and thus denies them equal access to their statutory right under Indiana law to cast an early in-person absentee ballot.

**ANSWER: MCEB Defendants deny the allegations in paragraph 49 of the Complaint.**

50.     Because of the vast disparity in the number of registered voters per early voting site in Marion County, Plaintiffs, their respective members, and other Marion County voters are treated less favorably than voters in every other county in Indiana with respect to early in-person absentee voting, especially voters in contiguous counties and in other urban, more heavily populated counties. This discriminatory treatment is solely by virtue of their residence in Marion County. This discriminatory treatment serves no compelling governmental interest, lacks any substantial relationship to any important governmental interest, and is not rationally related to any legitimate governmental interest.

**ANSWER: MCEB Defendants deny that restrictions on early voting lack a compelling governmental interest, lack any substantial relationship to any important government interest, and are not rationally related to any legitimate government interest, but otherwise lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 50 of the Complaint.**

51.     As compared to other Indiana voters, Marion County voters are especially harmed by unnecessary burdens on their right to vote because they disproportionately lack the resources, transportation, or flexible work schedules. The only location authorized for early voting: the office of the Marion County Circuit Court Clerk, is located in the heart of downtown Indianapolis in the City-County Building with little to no free parking. For some voters in the outlying townships, a trip downtown can be more than a 20-mile round trip and takes well over an hour by private vehicle, and two or more hours by public transportation.

**ANSWER: MCEB Defendants admit that the Marion County Circuit Court Clerk in downtown Indianapolis in the City-County Building is a location authorized for early voting and that there is little free parking nearby, but otherwise lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 51 of the Complaint.**

52.     Many Marion County voters, and especially those of color, also experience disadvantages in education, income, employment, and access to transportation which, when compounded by complications caused by jobs, childcare responsibilities and/or class schedules, make it extremely difficult if not impossible for them to vote on Election Day. These disadvantages interact with other pre-existing election laws, including the earliest Election Day poll closing time in the nation (6:00 p.m.), the absence of an Indiana statute requiring employers to give employees time off to vote, and the absence of no-fault mail-in absentee voting for able-bodied voters under the age of 65, to further exacerbate the burdens on Marion County voters by the arbitrary limitation of early in-person absentee voting to a single location.

**ANSWER: MCEB Defendants admit that Election Day poll closing time is 6:00 p.m. in Indiana, admit that no Indiana statute requires employers to give employees time off to vote, and admit that mail-in absentee voting requires a statutorily authorized reason, but otherwise lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 52 of the Complaint.**

53.     By denying Marion County voters anything close to approximating equal access to a statutory right they already have under I. C. § 3-11-10-26, Defendants are unnecessarily and unequally burdening the right of Plaintiffs and their members' right to cast an early in-person

absentee ballot in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER: MCEB Defendants deny the allegations in paragraph 53 of the Complaint.**

54.     Marion County voters have a constitutionally-protected right to participate in federal elections on an equal basis as other citizens in Indiana, and by consistently refusing to approve satellite locations for early in-person absentee voting, Defendants are abridging, impeding and unnecessarily burdening the right to vote of voters who reside in Marion County.

**ANSWER: MCEB Defendants admit that Marion County voters have a constitutionally-protected right to participate in federal elections on an equal basis as other citizens in Indiana, but otherwise deny the remaining allegations in paragraph 54 of the Complaint.**

55.     Because the State of Indiana has chosen to give nearly all of its registered voters the right to cast an early in-person absentee vote, that right must be administered evenhandedly and in a non-discriminatory manner regardless of a voter's residence.

**ANSWER: MCEB Defendants admit that the right to vote must be administered in a non-discriminatory manner regardless of a voter's residence, but otherwise deny the remaining allegations in paragraph 55 of the Complaint.**

56.     The United States Supreme Court has ruled that the right to vote is protected not just in the initial allocation of the franchise, but also to the manner of its exercise.

US.113024124.01

**ANSWER: MCEB Defendants state that the allegations in paragraph 56 states a conclusion of law for which no answer is required.**

57.     The Court has also observed that location and accessibility of polling places have a direct effect on a person's ability to exercise his or her right to vote.

**ANSWER: MCEB Defendants state that the allegations in paragraph 57 states a conclusion of law for which no answer is required.**

58.     The arbitrary and/or discriminatory decisions made by the MCEB not to approve early satellite voting locations in 2010, 2012, 2014 and 2016 has resulted in the abridgement, impairment and unnecessary burdening of the statutory right of Marion County registered voters to cast an early in-person absentee ballot under I. C. § 3-11-10-26, and those decisions have thus denied Marion County voters the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

**ANSWER: MCEB Defendants deny the allegations in paragraph 58 of the Complaint.**

59.     As it has been applied in Marion County in and after 2010, I.C. § 3-11-10-26.3 (b) burdens and impairs Plaintiffs' voting rights.

**ANSWER: MCEB Defendants deny the allegations in paragraph 59 of the Complaint.**

60.     I. C. § 3-11-10-26.3, as it has been applied in Marion County beginning in 2010 and continuously thereafter, and insofar as it allows a single member of the MCEB without any justification or reason to arbitrarily and/or discriminatorily refuse to approve satellite early

US.113024124.01

voting locations, limits voters' access to polling places at which voters may vote early and thereby abridges the ability of Marion County voters to cast an early in-person ballot.

**ANSWER: MCEB Defendants deny the allegations in paragraph 60 of the Complaint.**

61.     Particularly when considered along with other pre-existing obstacles to voting in Indiana, including but not necessarily limited to Indiana's earliest in the nation (6 p.m.) poll closing time on Election Day, the absence of a statute requiring employers to give paid time off work to vote, and the absence of no-fault mail-in absentee voting, the MCEB's refusal to approve satellite voting locations imposes unnecessary burdens on Plaintiffs and their members, and indeed on all Marion County voters.

**ANSWER: MCEB Defendants admit that Election Day poll closing time is 6:00 p.m. in Indiana, admit that no Indiana statute requires employers to give employees time off to vote, and admit that mail-in absentee voting requires a statutorily authorized reason, but otherwise deny the remaining allegations in paragraph 61 of the Complaint.**

62.     Unless enjoined by this Court the MCEB will continue to refuse to approve the establishment of satellite sites for early in-person absentee voting.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 62 of the Complaint.**

63.     Plaintiffs have no adequate remedy at law.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 63 of the Complaint.**

64.     Plaintiffs will suffer irreparable harm if a preliminary injunction prohibiting Defendants from blocking or refusing to approve early satellite voting locations for the 2018 federal elections and beyond is not granted, while Defendants will suffer no harm whatsoever if preliminary relief is granted.

**ANSWER: MCEB Defendants deny the allegations in paragraph 64 of the Complaint.**

65.     Plaintiffs are likely to succeed on the merits of their constitutional and statutory claims.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 65 of the Complaint.**

66.     The public interest favors the granting of preliminary injunctive relief.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 66 of the Complaint.**

## COUNT II

## FOURTEENTH AMENDMENT DUE PROCESS VIOLATION

67.     Plaintiffs restate as if fully set forth herein the allegations in Paragraph 1 through 66 of this Complaint.

US.113024124.01

**ANSWER: MCEB Defendants restate as if fully set forth herein each and every answer set forth in the foregoing Paragraphs 1 through 66 of this Answer to Complaint for Declaratory and Injunctive Relief.**

68.     I.C. § 3-11-10-26.3 contains no standards for county election boards to follow in determining whether or not to approve the establishment of satellite voting offices.

**ANSWER: MCEB Defendants admit the allegations of paragraph 68 of the Complaint.**

69.     As a result, I.C. § 3-11-10-26.3 has operated and been applied by the MCEB in an arbitrary and discriminatory manner so as to unnecessarily burden the right of Plaintiffs, their respective members, and all Marion County voters of their right under Indiana law to cast an early in-person absentee ballot.

**ANSWER: MCEB Defendants deny the allegations in paragraph 69 of the Complaint.**

## COUNT III

## VIOLATION OF SECTION 2 OF THE VOTING RIGHTS ACT

70.     Plaintiffs restate as if fully set forth herein each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 69 of this Complaint.

**ANSWER: MCEB Defendants restate as if fully set forth herein each and every answer set forth in the foregoing Paragraphs 1 through 69 of this Answer to Complaint for Declaratory and Injunctive Relief.**

71.     Marion County and the State of Indiana have a long history of discriminating against African Americans that has substantially hindered their ability to participate in the political process.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 71 of the Complaint.**

72.     African Americans in Marion County have historically participated in the electoral process at lower levels than has the population as a whole.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 72 of the Complaint.**

73.     African Americans in Marion County have suffered from the effects of discrimination in housing, education, employment, health, criminal justice, and other areas that have further hindered their ability to participate in the political process.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 73 of the Complaint.**

74.     Discrimination in education against African Americans in Marion County has been particularly pronounced. Disparities in graduation rates between African Americans and whites are the result of years of official discrimination in Marion County that continued well after the Supreme Court banned school segregation in *Brown v. Board of Education*, 347 U.S. 483 (1954). This discrimination is evidenced by a finding of the federal courts that the

Indianapolis school board deliberately operated a *de jure* dual, racially-segregated school system in Marion County until the federal courts ordered an end to that system in 1971. *United States v. Bd. of School Comm'rs,* 332 F.Supp. 655 (S.D. Ind. 1971), *aff'd* 474 F.2d 81 (7th Cir.), *cert. denied* 413 U.S. 920 (1973).

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 74 of the Complaint and the case law cited speaks for itself.**

75.     The application of I. C.§ 3-11-10-26.3 (b), and Defendants' failure and/or refusal to approve satellite locations for early voting interacts with the ongoing effects of Marion County's history of discrimination against African Americans disproportionately abridges, denies, and/or burdens the constitutional and statutory right to vote of Marion County African Americans.

**ANSWER: MCEB Defendants deny the allegations in paragraph 75 of the Complaint.**

76.     African Americans in Marion County and elsewhere are more likely than other voters to utilize early voting. Yet, because of Defendants' failure and/or refusal to approve satellite voting sites for early voting, the early voting rate in Marion County, the county with Indiana's largest African-American population and which has a greater percentage of African American residents than Indiana as a whole, lags far behind nearly every other Indiana county in early voting turnout.

US.113024124.01

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 76 of the Complaint.**

77.     This disproportionate burden on African American voters is compounded by the cost of voting, such as the increased wait time at polling places on Election Day and at Marion County's only early voting location.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 77 of the Complaint.**

78.     Defendants' failure and/or refusal to approve satellite locations for early voting has depressed turnout among racial minorities, who make up a disproportionate percentage of Marion County residents living in poverty, and long wait times to vote burden poor individuals in particular because they are less able than wealthier individuals to expend time because they tend to have less flexible job schedules, and less access to convenient means of transportation.

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 78 of the Complaint.**

79.     Based on the totality of the circumstances, the disproportionate burdens imposed on African-American voters in Marion County from Defendants' failure and/or refusal to approve early satellite voting locations, along with other pre-existing obstacles to voting, has resulted and will, unless enjoined by this Court, continue to result in African-American voters in Marion County having unequal access to the polls and less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

US.113024124.01

**ANSWER: MCEB Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 79 of the Complaint.**

80.     Section 2 of the Voting Rights Act of 1965 provides in part that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State...in a manner which results in a denial or abridgement of the right of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a).

**ANSWER: MCEB Defendants state that the language of Section 2 of the Voting Rights Act of 1965 referenced in paragraph 80 of the Complaint speaks for itself.**

81.     The interaction of Defendants' failure and/or refusal to approve satellite early voting sites in Marion County with the ongoing and lingering effects of historical race discrimination in Marion County has caused and will continue to cause an inequality in the opportunity of African Americans to vote and to elect candidates of their choice, in violation of Section 2 of the Voting Rights Act.

**ANSWER: MCEB Defendants deny the allegations in paragraph 81 of the Complaint.**

**COUNT IV**

**VIOLATION OF INDIANA CONSTITUTION**

82.     Plaintiffs restate as if fully set forth herein each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 81 of this Complaint.

US.113024124.01

**ANSWER: MCEB Defendants restate as if fully set forth herein each and every answer set forth in the foregoing Paragraphs 1 through 81 of this Answer to Complaint for Declaratory and Injunctive Relief.**

83.     Article 2, Section 1 of the Indiana Constitution states that "[a]ll elections shall be free and equal."

**ANSWER: MCEB Defendants state that the language of Article 2, Section 1 of the Indiana Constitution referenced in paragraph 83 of the Complaint speaks for itself.**

84.     As a statute dealing with the right to vote, I. C. § 3-11-10-26.3 must be interpreted in accordance with the requirement of Article 2, Section 1 of the Indiana Constitution, that all elections "shall be free and equal," which is, among other things, to assure that every voter's opportunity to vote is equal regardless of the county in which they reside.

**ANSWER: MCEB Defendants state that the allegations in paragraph 84 states a conclusion of law for which no answer is required.**

85.     By giving a single member of the MCEB the authority to reject any proposed resolution satellite voting offices, which authority has been exercised in every election by the MCEB's Republican-appointed predecessors from 2010 through and including 2016, I. C.§ 3-11-10-26.3 has resulted in substantially lesser opportunities, and higher costs, for Marion County voters to vote, thus violating the command of the Indiana Constitution that the opportunity to cast a ballot in elections be "free and equal" irrespective of the county in which a particular voter resides.

**ANSWER: MCEB Defendants deny the allegations in paragraph 85 of the Complaint.**

US.113024124.01

## AFFIRMATIVE DEFENSES

1.      One or more of Plaintiffs' claims may fail to state a claim upon which relief can be granted.

2.      Plaintiffs' claims are barred by the doctrine of waiver, laches, and estoppel.

3.      MCEB Defendants acted in good faith at all times with respect to all decisions and actions regarding Plaintiffs.

4.      To the extent any of Plaintiffs' claims are untimely under the applicable statute of limitations, they are barred.

5.      Plaintiffs cannot establish any discriminatory conduct by MCEB Defendants, and, even if a jury were to find to the contrary, MCEB Defendants would have made the same decisions and taken the same actions regardless of Plaintiffs' allegedly protected status.

6.      MCEB Defendants reserves the right to assert any and all additional affirmative and other defenses that may become applicable based on information learned during discovery or for other appropriate reasons.

WHEREFORE Defendants, Marion County Election Board and Keith Johnson, Maura Hoff, and Myla A. Eldridge, each in their official capacities as members of the Marion County Election Board pray that Plaintiffs take nothing by their Complaint, the Court enter judgement for Defendants and against Plaintiffs, and that the Court award all other just and proper relief.

US.113024124.01

Date:  June 27, 2017                    Respectfully submitted,


                                        FAEGRE BAKER DANIELS LLP

                                        By: /s/ Daniel E. Pulliam
                                        A. Scott Chinn (#17903-49)
                                        Anne K. Ricchiuto (#25760-49)
                                        Daniel E. Pulliam (#29439-49)
                                        300 N. Meridian Street, Suite 2700
                                        Indianapolis, Indiana 46204
                                        Telephone:    (317) 237-0300
                                        Facsimile:    (317) 237-1000
                                        Email:  Scott.Chinn@FaegreBD.com
                                        Email:  Anne.Ricchiuto@FaegreBD.com
                                        Email:  Daniel.Pualliam@FaegreBD.com


                                        Donald E. Morgan (30776-49)
                                        OFFICE OF CORPORATION COUNSEL
                                        200 East Washington Street, Suite 1601
                                        Indianapolis, IN 46204
                                        Phone: 317-327-4055
                                        Fax: 317-327-3698
                                        Email: donald.morgan@indy.gov

                                        *Counsel for Marion County Election Board and
                                        Keith Johnson, Maura Hoff, and Myla A. Eldridge,
                                        each in their official capacities as members of the
                                        Marion County Election Board*

US.113024124.01

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

William R. Groth
Daniel Bowman
FILLENWARTH DENNERLINE GROTH & TOWE LLP
429 East Vermont Street, Suite 200
Indianapolis, IN 46202
(317) 353-9363
(317) 351-7232 (fax)
wgroth@fdgtlaborlaw.com
dbowman@fdgtlaborlaw.com

*/s/ Daniel E. Pulliam*

US.113024124.01