# PLAINTIFFS'
# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


COMMON CAUSE INDIANA; NATIONAL )
ASSOCIATION FOR THE ADVANCEMENT)
OF COLORED PEOPLE, by its      )
Greater Indianapolis Branch    )
3053 and on behalf of its      )
individual members; DORIS A.   )
MCDOUGAL; and JOHN WINDLE,     )
                 Plaintiffs, )
                               )
          -vs-                 )    CIVIL ACTION NO.
                               ) 1:17-cv-01388-SEB-TAB
MARION COUNTY ELECTION BOARD;  )
KEITH JOHNSON, MAURA HOFF, and )
MYRA A. ELDRIDGE, each in      )
their official capacities as   )
members of the MARION COUNTY   )
ELECTION BOARD,                )
                 Defendants. )


     The deposition upon oral examination of

 MAURA HOFF, a witness produced and sworn before me,

 Dianne Lockhart, RMR, CRR, CSR, a Notary Public in

 and for the County of Marion, State of Indiana, taken

 on behalf of the Plaintiffs at the offices of Faegre

 Baker Daniels, 300 North Meridian Street, Suite 2700,

 Indianapolis, Marion County, Indiana, on the 6th day

 of September, 2017, commencing at 9:55 a.m. pursuant

 to the Federal Rules of Civil Procedure.

                 CIRCLE CITY REPORTING
                 135 North Pennsylvania
                      Suite 1720
                 Indianapolis, IN  46204
                    (317) 635-7857

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:
                                William R. Groth
 3                              Daniel P. Bowman
                                FILLENWARTH DENNERLINE GROTH &
 4                                TOWE, LLP
                                429 East Vermont Street
 5                              Suite 200
                                Indianapolis, IN  46202
 6

 7    FOR THE DEFENDANTS:
                                Anne K. Ricchiuto
 8                              FAEGRE BAKER DANIELS
                                300 North Meridian Street
 9                              Suite 2700
                                Indianapolis, IN  46204
10                                    -and-
                                Donald E. Morgan
11                              OFFICE OF CORPORATION COUNSEL
                                200 East Washington Street
12                              Room 1601
                                Indianapolis, IN  46204
13

14    FOR THE STATE OF INDIANA:
                                Kelly S. Witte
15                              Aleksandrina P. Pratt
                                OFFICE OF THE ATTORNEY GENERAL
16                              302 West Washington Street
                                IGCS Fifth Floor
17                              Indianapolis, IN  46204

18
      FOR THE DEPONENT:
19                              Derek R. Molter
                                ICE MILLER LLP
20                              One American Square
                                Suite 2900
21                              Indianapolis, IN  46282

22

23
      ALSO PRESENT:             Julia Vaughn
24

25
```

I N D E X   O F   E X A M I N A T I O N

PAGE

DIRECT EXAMINATION ............................. 5
        Questions by William R. Groth
CROSS-EXAMINATION ..............................49
        Questions by Derek R. Molter
REDIRECT EXAMINATION ..........................52
        Questions by William R. Groth
CROSS-EXAMINATION ..............................55
        Questions by Anne K. Ricchiuto
FURTHER REDIRECT EXAMINATION ....................59
        Questions by William R. Groth

I N D E X   O F   E X H I B I T S

PAGE

Plaintiff's Deposition Exhibit No.:
1 - Marion County Election Board Meeting
        Agenda, 3-2-16...........................33
2 - Handwritten Notes ..........................35
3 - Marion County Election Board Meeting
        Agenda, 3-2-16...........................36
4 - Resolution No. 01-16 .......................39
5 - Resolution No. 13-16 .......................42
6 - Email Chain, Top Email 8-30-16 to Hoff ......44
7 - Email Chain, Top Email 10-31-16 from
        McQuillen................................49

1  M A U R A    H O F F,  having been first duly sworn to

2        tell the truth, the whole truth and nothing but

3        the truth relating to said matter, was examined

4        and testified as follows:

5           MS. RICCHIUTO:  Anne Ricchiuto for all

6        defendants, and especially today for Ms. Hoff in

7        her official capacity as a member of the Marion

8        County Election Board.

9           MR. MOLTER:  Derek Molter for Ms. Hoff.

10           MR. MORGAN:  Donnie Morgan for the official

11        capacity defendants and the Election Board.

12           MS. PRATT:  Aleksandrina Pratt for the

13        State.

14           MS. WITTE:  Kelly Witte for the State of

15        Indiana.

16           MS. VAUGHN:  Julia Vaughn, Common Cause

17        Indiana.

18           MR. BOWMAN:  Daniel Bowman, counsel for

19        plaintiffs.

20           MR. GROTH:  And I'm Bill Groth, and I'm also

21        co-counsel for plaintiffs Common Cause Indiana

22        and the Indianapolis branch of the NAACP as well

23        as the state branch.

24

25

1  DIRECT EXAMINATION,

2      QUESTIONS BY WILLIAM R. GROTH:

3  Q   Would you state your name, please.

4  A   Maura Hoff.

5  Q   As I just have introduced myself to you, my name

6      is Bill Groth, and I represent Common Cause

7      Indiana and the NAACP in this particular

8      litigation.  Thank you for coming to join us here

9      this morning.  I have a few questions.  Hopefully

10     you are familiar with the deposition procedures

11     as an attorney yourself.

12 A   Yes.

13 Q   I don't need to spend a lot of time explaining

14     those.

15         Let me ask you first what documents you

16     reviewed in preparation for your testimony here

17     this morning.

18 A   None specifically.  The discovery we recently

19     propounded.

20 Q   Okay.  Anything else?

21 A   No.

22 Q   Okay.  And with whom did you speak in preparing

23     for your testimony this morning?

24 A   My lawyers.

25 Q   And that would include Ms. Ricchiuto?

| 1 | A | Yes. |
|---|---|---|
| 2 | Q | Anyone else? |
| 3 | A | Tenley Drescher-Rhoades. |
| 4 | Q | Okay.  Also with Faegre.  And anyone outside of |
| 5 | | Faegre? |
| 6 | A | Yeah.  Derek Molter of Ice Miller. |
| 7 | Q | What is Mr. Molter's capacity relative to you? |
| 8 | A | He's representing me in my personal capacity. |
| 9 | Q | Okay.  And you understand you're not being sued |
| 10 | | in your personal capacity in this case; correct? |
| 11 | A | Yes. |
| 12 | Q | Now, you are a licensed attorney in the state of |
| 13 | | Indiana; is that correct? |
| 14 | A | Yes. |
| 15 | Q | And are you currently employed? |
| 16 | A | Yes. |
| 17 | Q | By whom? |
| 18 | A | The Hoff Law Firm. |
| 19 | Q | Okay.  And are you the sole proprietor of that |
| 20 | | law firm? |
| 21 | A | Yes. |
| 22 | Q | What sort of law do you practice? |
| 23 | A | Municipal law, zoning and business are my main |
| 24 | | areas. |
| 25 | Q | Do you represent any governmental clients? |

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | Could you tell me a few of them? |
| 3 | A | Currently I represent the Owen County Auditor.  I |
| 4 | | believe that's the only government client |
| 5 | | currently.  The Indiana Criminal Justice |
| 6 | | Institute, I serve as their ALJ. |
| 7 | Q | Did you at one time serve as an attorney for the |
| 8 | | City of Lawrence? |
| 9 | A | Yes.  I've served two different mayors and the |
| 10 | | council there at different times. |
| 11 | Q | Okay.  Who are the mayors that you served? |
| 12 | A | Paul Ricketts and Steve Collier. |
| 13 | Q | Are you currently a member of any Marion County |
| 14 | | boards or commissions? |
| 15 | A | The Election Board. |
| 16 | Q | Marion County Election Board? |
| 17 | A | Yes. |
| 18 | Q | And how long have you been a member of the Board? |
| 19 | A | I was appointed in either January or February of |
| 20 | | 2016. |
| 21 | Q | Whom did you succeed? |
| 22 | A | Mindy Westrick Brown. |
| 23 | Q | And are you still a member? |
| 24 | A | Yes. |
| 25 | Q | Are you on for a particular term? |

1  A   No.

2  Q   Just serve at the pleasure of the Marion County

3      Republican chair?

4  A   Correct.

5  Q   Who -- who appointed you?

6  A   Jennifer Ping was the chairman at that time.

7  Q   Is she still Marion County Republican chair?

8  A   No.

9  Q   When did she depart that position, if you know?

10 A   Roughly spring or summer of 2016 an ordinance was

11     passed that you couldn't both lobby at the city

12     and be the county chair, and she stepped down at

13     that time and Mike McQuillen took the position.

14 Q   And she's a lobbyist, so she was excluded?

15 A   Yes.

16 Q   Did you seek out this position with the Board or

17     did they -- were you recruited for it?

18 A   I was recruited.

19 Q   All right.  And were you recruited by Ms. Ping?

20 A   Yes.

21 Q   Anyone else involved in that recruitment process?

22 A   Not that I know of.

23 Q   And you obviously agreed to take the position.

24 A   I did.

25 Q   Were you given any instructions by Ms. Ping about

| | | |
|---|---|---|
| 1 | | party line on certain issues or on all issues? |
| 2 | A | I would not say I felt obliged to follow the |
| 3 | | party line, but as an appointee, I would give |
| 4 | | deference to the opinion of the party on those |
| 5 | | matters. |
| 6 | Q | So if your personal opinion conflicted with that |
| 7 | | of the party, you would follow the -- you would |
| 8 | | follow the party; is that a fair way of saying |
| 9 | | it? |
| 10 | A | If my personal opinion differed strongly, I would |
| 11 | | either vote my personal opinion or I would |
| 12 | | resign. |
| 13 | Q | Okay.  But you never resigned. |
| 14 | A | Correct. |
| 15 | Q | Were there certain issues that were kind of party |
| 16 | | line issues, shall we say? |
| 17 | A | Satellite voting, the reason we're here today, |
| 18 | | and central count both tend to be party divided. |
| 19 | Q | Central count of absentee ballots? |
| 20 | A | Yes. |
| 21 | Q | And why was central count an issue that you would |
| 22 | | deal with?  Wasn't that a matter that the |
| 23 | | legislature had regulated, do you know? |
| 24 | A | I don't know.  I know we had resolutions before |
| 25 | | us that involved central count. |

| | | |
|---|---|---|
| 1 | A | I believe he chose to step down and not run for |
| 2 | | reelection, so it was the natural cycle as well. |
| 3 | Q | And who's currently the chair? |
| 4 | A | Senator Jim Merritt. |
| 5 | Q | So any instructions you would have received |
| 6 | | relative to your votes on the Board would have |
| 7 | | first been from Ms. Ping, secondly from -- from |
| 8 | | Mr. McQuillen, and presently from Senator |
| 9 | | Merritt; is that accurate? |
| 10 | A | That's accurate. |
| 11 | Q | Okay.  Did Ms. Ping give you instructions about |
| 12 | | how you were expected to vote on satellite voting |
| 13 | | resolutions that came before the Board in 2016? |
| 14 | A | We discussed it.  She did not give me direction, |
| 15 | | but rather we talked through it and agreed on how |
| 16 | | I should vote. |
| 17 | Q | Okay.  And the agreement was that you should vote |
| 18 | | no on that resolution? |
| 19 | A | Yes, are we specifically talking about spring or |
| 20 | | fall? |
| 21 | Q | Well, let's be specific.  Did the issue of |
| 22 | | satellite voting come before the Board in the |
| 23 | | spring of 2016? |
| 24 | A | Yes. |
| 25 | Q | And you didn't have a proxy at that meeting? |

1    A    Correct.

2    Q    And you voted against the resolution?

3    A    Yes.

4    Q    And you did that after speaking with Ms. Ping?

5    A    Yes.

6    Q    Tell me about the discussion that you and

7         Ms. Ping had about that resolution.

8    A    Sure.  One thing that Ms. Ping pointed out was

9         that the resolution had solely been drafted by

10        the Democrat Party and had not been discussed

11        with her, so there'd been no collaboration on the

12        language that was presented to the Board ahead of

13        time.

14            The other big point we discussed was the

15        cost and administrative headache that it would

16        bring.

17   Q    Anything else?

18   A    Those are the two main points that I remember us

19        discussing.

20   Q    Now, when you attended the spring meeting at

21        which the satellite voting resolution was being

22        considered, did you offer any public explanation

23        as to why you decided to vote against that

24        resolution?

25   A    I don't remember doing so.

```
 1   Q   You didn't tell the other members of the Board
 2       that the Republican Party position was that the
 3       resolution was unacceptable because it hadn't
 4       been discussed in advance with the Republican
 5       county chair?
 6   A   I don't remember saying that.
 7   Q   And you didn't mention the cost factor?
 8   A   No.
 9   Q   Isn't it true that the central count of absentee
10       ballots is more expensive than counting absentee
11       ballots at the precincts?
12   A   I don't know the answer to that.
13   Q   Did you conduct any investigation to determine
14       what the cost factor was of having two or three
15       satellite voting sites?
16   A   I do not remember any specific numbers, no.
17   Q   Well, was it your idea or Ms. Ping's idea that
18       this would be too costly to have two or three
19       satellite voting sites in the May 2016 primary?
20   A   I do not remember who would have brought that
21       idea up first, only that we discussed it, having
22       both been in that building before on an Election
23       Day and seeing the process of counting them.
24   Q   You didn't know how much it would cost, though,
25       to have satellite voting sites, you've said, I
```

|   |   |   |
|---|---|---|
| 1 |   | proxy, I would have emailed Mike, Jennifer and |
| 2 |   | Joey all at the same time, so I believe Joey |
| 3 |   | replied and said I'm available, I'll cover it for |
| 4 |   | you. |
| 5 | Q | Why would you have continued to email Jennifer |
| 6 |   | Ping if she no longer served as county chair? |
| 7 | A | She was the vice chair at that point. |
| 8 | Q | And what was Joey Fox's capacity, if any, with |
| 9 |   | the Marion County Republican Party? |
| 10 | A | Executive director. |
| 11 | Q | So was the choice -- the choice to designate Fox |
| 12 |   | as your proxy was not made by you; is that a fair |
| 13 |   | statement? |
| 14 | A | No, I think in that situation, once he said he |
| 15 |   | was available, I emailed Brienne Delaney and let |
| 16 |   | her know that Joey would be my proxy. |
| 17 | Q | Did you speak with Mr. Fox before the meeting |
| 18 |   | about what was on the agenda and, you know, what |
| 19 |   | would be -- what decisions would be made at that |
| 20 |   | meeting? |
| 21 | A | Yes. |
| 22 | Q | Did you speak specifically about the satellite |
| 23 |   | voting resolution that was on that agenda? |
| 24 | A | Yes. |
| 25 | Q | And tell me about that discussion. |

| | | |
|---|---|---|
| 1 | A | I let him know that it would be my preference for |
| 2 | | him to vote no on that resolution. |
| 3 | Q | Did he argue with you? |
| 4 | A | No. |
| 5 | Q | Did you need -- strike that. |
| 6 | | After the meeting -- these meetings are |
| 7 | | videotaped, are they not? |
| 8 | A | Yes. |
| 9 | Q | Did you watch, later watch the videotape of the |
| 10 | | October 11 meeting? |
| 11 | A | No. |
| 12 | Q | After the October 11 meeting, were you contacted |
| 13 | | by any member of the media about your vote |
| 14 | | against satellite -- not your vote, but Mr. Fox's |
| 15 | | vote against satellite voting? |
| 16 | A | Yes. |
| 17 | Q | And who contacted you from the media? |
| 18 | A | Matt Tully of the Indy Star left me a voice mail. |
| 19 | Q | Did you return his call? |
| 20 | A | No. |
| 21 | Q | Did you choose not to speak with Mr. Tully? |
| 22 | A | I -- I can't remember exactly whether I even got |
| 23 | | the message before his deadline to print that |
| 24 | | day, but I also chose not to call him at any |
| 25 | | other point. |

| | | |
|---|---|---|
| 1 | Q | Why did you choose not to speak with Mr. Tully? |
| 2 | A | I consulted Mike McQuillen and Jennifer Ping as |
| 3 | | to whether they wanted to make a party statement |
| 4 | | about the issue, and they advised that it would |
| 5 | | be better to not comment. |
| 6 | Q | Did you and Mr. Fox have any discussion about why |
| 7 | | he should vote against the satellite voting |
| 8 | | resolution? |
| 9 | A | Yes, briefly. |
| 10 | Q | What reasons, if any, did you discuss for |
| 11 | | opposing it? |
| 12 | A | After we opposed it in the spring, it was |
| 13 | | understood that the Republican Party and the |
| 14 | | Democrat Party were going to get together and |
| 15 | | work in collaboration, and I was told that those |
| 16 | | contacts never happened, that there was a round |
| 17 | | of phone tag between Jennifer Ping and Clark |
| 18 | | Eldridge and they never got ahold of one another, |
| 19 | | so no discussion ever happened. |
| 20 | Q | So the reason the voters in Marion County didn't |
| 21 | | have satellite sites in the fall of 2016 was a |
| 22 | | lack of communications between the Republican and |
| 23 | | Democratic Party leadership? |
| 24 | | MR. MOLTER:  Object to form. |
| 25 | A | I would not say that was the sole reason, but |

| | | |
|---|---|---|
| 1 | | that would be part of it, yes. |
| 2 | Q | Well, what would be any other reasons? |
| 3 | A | Gosh, there are many.  One is that the public |
| 4 | | seems to misunderstand what early voting is, that |
| 5 | | it's not actually voting, that it's filling out |
| 6 | | an absentee ballot in another location.  And I |
| 7 | | personally feel that an absentee ballot can be |
| 8 | | filled out at your home, which is even more |
| 9 | | convenient, so the necessity of providing |
| 10 | | additional locations is -- it's just not needed. |
| 11 | | The staff that would be needed to work each |
| 12 | | location, plus the huge burden that we still have |
| 13 | | paper poll books in Marion County makes the |
| 14 | | process very difficult.  And we knew that the |
| 15 | | Clerk's Office was planning to have all -- I'm |
| 16 | | going to try to word this correctly.  I hope that |
| 17 | | I understood it correctly.  That everyone who |
| 18 | | voted early, all those names would have to go to |
| 19 | | the correct precinct on Election Day and be |
| 20 | | marked off in the paper poll books because we |
| 21 | | didn't have an electronic system to do so, and |
| 22 | | that that was going to significantly delay voting |
| 23 | | on Election Day, which I felt was a burden to the |
| 24 | | voter who showed up on Election Day.  So those |
| 25 | | are some of the main reasons. |

1            MS. RICCHIUTO:   Object to the form.

2   A    No.

3   Q    Had nothing to do with partisan politics?   Is

4        that what your answer is?

5   A    If it did, that decision was made by someone

6        else.   That's not a reason I was given for voting

7        that way.

8   Q    In other words, that would be a reason

9        potentially that was in the mind of the person

10       who instructed you to vote against the satellite

11       locations?

12           MR. MOLTER:   Objection.   Misstates prior

13       testimony.

14  A    I can't know that.

15  Q    Were you aware that parking around the

16       City-County Building in 2016 was severely limited

17       due to the construction of the Cummins

18       Indianapolis headquarters and other factors?

19  A    I knew construction was happening in the area.

20  Q    Did you make any attempt to investigate the

21       availability or not of parking adjacent to the

22       City-County Building?

23  A    Other than the fact that I went to the

24       City-County Building one or two days a month and

25       had to park to go to a meeting and I was always

1  Q   Are you aware of the percentage of Marion

2      County's population that is African-American?

3  A   No.

4  Q   And you've never made any effort to look into

5      that, have you?

6  A   To research that, no.

7  Q   Are you denying that your decision to oppose

8      satellite voting in Marion County was in any way

9      influenced by partisan political considerations?

10         MR. MOLTER:  Object to the form.

11 A   I don't deny that partisan politics probably

12     plays a hand in decision making.

13 Q   Relative to satellite voting?

14         MR. MOLTER:  Same objection.

15 A   Yes.

16 Q   Okay.  Thank you.

17         MR. GROTH:  Can we go off the record?

18         (At this time a recess was taken.)

19 BY MR. GROTH:

20 Q   One of the documents that you produced to us

21     through your attorney in response to our request

22     for production was an email from a citizen to

23     Mr. McQuillen dated October 31, 2016, complaining

24     about the lack of satellite voting locations here

25     in Marion County.  Do you recall that email?