UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA; <br> NAACP, by its Greater Indianapolis Branch 3053, <br> and on behalf of its individual members; <br> DORIS A. McDOUGAL; and <br> JOHN WINDLE, <br><br>                  Plaintiffs, <br><br>     v. <br><br> MARION COUNTY ELECTION BOARD; and <br> KEITH JOHNSON, MELISSA THOMPSON, and <br> MYRA A. ELDRIDGE, each in their official <br> capacities as members of the MARION <br> COUNTY ELECTION BOARD; <br><br>                  Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CAUSE NO.: 1:17-cv-1388-SEB-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

The Marion County Election Board ("MCEB") does not contest Plaintiffs' claims in its response to Plaintiffs' motion for preliminary injunction. Instead, MCEB uses its response primarily as an opportunity to explain the administrative challenges it will face if a preliminary injunction were to issue ordering the establishment of satellite voting locations too close to the May 2018 primary election. Plaintiffs are not unsympathetic to those challenges and join in the MCEB's request that, should this Court be inclined to order the MCEB to establish at least two early voting locations for the May 8, 2018 primary election in Marion County, it expedite its consideration of Plaintiffs' motion for preliminary injunction to the extent practicable.

In keeping with the spirit of that request, and to assist the Court in expediting a ruling on their motion, Plaintiffs are willing to and do hereby expressly:

1

1. Limit their request for preliminary injunctive relief to seeking an order from this Court that only two satellite voting locations be ordered for the May 8, 2018 primary election in Marion County;
2. Withdraw their request for an evidentiary hearing on the preliminary injunction; and
3. Withdraw their request for preliminary injunctive relief on their claim under Section 2 of the Voting Rights Act.

Plaintiffs maintain their request for *at least* two satellite voting locations for the 2018 general election and beyond, and if this matter proceeds to a trial on the merits after the preliminary injunction is resolved they reserve the right to produce evidence and argument on their Section 2 claim at that time. Finally, in lieu of having an evidentiary hearing on their motion, Plaintiffs designate affidavits from John Windle and Julie Petrison, which provide first-hand accounts of the obstacles they, and by implication other voters, encountered when they attempted to cast an early in-person ("EIP") absentee ballot at the office of the Marion County Clerk in the City-County Building in the 2016 elections.

Plaintiffs address two miscellaneous issues raised in the Attorney General's *amicus curiae* brief here, and use the remainder of their reply to address the Attorney General's remaining legal arguments. First, the Attorney General attempts to frame satellite voting locations for EIP absentee voting as *a problem* that must be contained through the unanimity requirement of the Satellite Voting Statute. (Dkt. No. 67-2, 2) ("the unanimity requirement is designed to ensure bipartisan support for additional EIP locations and to thwart creation of such locations based on purely partisan interests"). There is no evidence or any reason whatsoever to believe that the Indiana General Assembly viewed the existence satellite voting locations with such skepticism and mistrust. The Attorney General does not point to a single example of a

political party, through its election board appointee, proposing specific satellite voting locations for purely partisan reasons. Quite to the contrary, the undisputed evidence demonstrates that election boards in counties adjacent to Marion County, and in nearly all other urbanized counties, routinely establish satellite voting locations solely to make voting more convenient and accessible for all voters, not just their own partisans. Only in Marion County, by far the most populous and racially diverse county in the state, are voters denied access to satellite voting locations for arbitrary or political reasons.

Second, the Attorney General asserts that the recent "agreement" reached by the parties regarding a resolution to convert Marion County to a vote center county in 2019 (under IC § 3-11-18.1) is proof that the MCEB is "able to achieve bipartisan agreement regarding additional EIP locations." (Dkt. No. 67-2, 3). He is wrong. The Resolution does not mention that the Board will not establish any satellite voting locations in 2018. (Dkt. No. 66-1, 9-11 (Eldridge Dep., pp. 36-41)). Moreover, the resolution does not guarantee the establishment of satellite voting locations in 2019 and beyond; instead it simply establishes a committee to make recommendations to the MCEB. (Dkt. No. 67-2, 18-19). The resolution also imposes no guidelines or restrictions on the MCEB's discretionary establishment of satellite voting locations. Though some may see it as a sign of bipartisanship, the resolution contains no binding assurances that it will remedy the burden imposed on Plaintiffs' rights by the MCEB's failure to establish satellite locations for EIP absentee voting from 2010 through the 2018 elections.

Further, in an admission attributed to Melissa Thompson, the resolution "was made in response to a lawsuit filed by Common Cause Indiana and the Indianapolis NAACP that challenges the number of early voting locations in the county. Marion County has one early voting location." (Dkt. No. 67-2) (referencing Fatima Hussein, "Marion County Election Board

3

to Replace Precincts with Vote Centers," *The Indianapolis Star,* January 24, 2018, https://www.indystar.com/story/news/2018/01/24/marion-county-election-board-replace-precincts-half-many-vote-centers/1057817001/). Thus, contrary to the Attorney General's assertion, the Resolution is not evidence that the political parties in Marion County are capable of reaching bipartisan agreement on satellite voting locations, only that this lawsuit may have increased the possibility that satellite locations will be open during the 2019 elections and beyond.

As discussed below, the MCEB's response confirms that Plaintiffs have demonstrated a likelihood of success on the merits of their claims, and that the balance of the harms favors the issuance of a preliminary injunction. The Attorney General's *amicus brief* fails to apply the proper legal standard to Plaintiffs' claims, i.e., the *Anderson-Burdick* framework, and as a result contributes little to the explication of the constitutional claims at issue.

**I. Plaintiffs have demonstrated a likelihood of success on the merits of their constitutional claims.**

**A. The *Anderson-Burdick* framework governs Plaintiffs' constitutional claims.**

Plaintiffs have made no claim that the Constitution mandates that states allow EIP absentee voting. However, the Indiana General Assembly has prescribed EIP absentee voting as an alternative means by which voters in Indiana may exercise their constitutional right to vote. Unlike mail-in absentee voting, which is only available to a limited subset of voters, EIP absentee voting, like Election Day voting, is open to all qualified voters unconditionally. Plaintiffs contend that the MCEB's refusal to establish satellite voting locations in Marion County beginning in 2010 and continuing to date imposes a discriminatory and unconstitutional burden on their right to vote.

The Attorney General claims that this case does not implicate any constitutional right, and therefore the *Anderson-Burdick* framework does not apply. The district court squarely rejected this argument in *One Wisconsin Institute, Inc. v. Thomsen*, 198 F. Supp. 3d 896, 933 (W.D. Wis. 2016), as did the Sixth Circuit implicitly in *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012), in which the court, quoting *Bush v. Gore,* 531 U.S. 98, 104 (2000), noted that the right to vote as protected by the Equal Protection Clause is not just protected in its initial allocation but "applies as well to the manner of its exercise." 697 F.3d at 428.

*One Wisconsin* involved a challenge to a statute that "limited municipalities to one location for in-person absentee voting." *Id*. at 931. Wisconsin, as does the Attorney General, contended, that "there is no constitutionally protected right to cast an absentee ballot," citing *Griffin v. Roupas*, 385 F.3d 1128, 1129 (7th Cir. 2004), for that proposition. *Id*. at 933. The district court found *Griffin* to be inapposite because:

> The *Griffin* court rejected the idea "that the Constitution requires all states to allow unlimited absentee voting," which defendants implicitly contend should end the discussion. But this case is not about Wisconsin's outright refusal to allow in-person absentee voting. Rather, plaintiffs allege that the state is *denying them the opportunity to exercise a right that they already have.*

*Id*. (emphasis added). Thus, the district court rejected Wisconsin's argument that the plaintiffs' challenge to the in-person absentee voting provisions did not implicate their constitutional rights.

The district court's conclusion in *One Wisconsin,* as well as that of the court of appeals in *Obama for America,* are unremarkable given the Supreme Court's broad mandate that "a court evaluating a constitutional challenge to an election regulation weigh the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Crawford v. Marion County Election Board,* 553 U.S. 181, 190 (2008) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

The same conclusion is warranted here. This case is not about Indiana's outright refusal to allow in-person absentee voting. Rather, it challenges the MCEB's burdening of a right Plaintiffs already have—to vote by casting an absentee ballot in-person before Election Day. In *Crawford*'s language, Plaintiffs' claims challenge an election regulation on the basis that it impairs or interferes with the right to vote. Accordingly, the *Anderson-Burdick* framework governs Plaintiffs' constitutional claims.[1]

### B. Plaintiffs' evidence establishes that the lack of satellite voting locations in Marion County burdens their right to vote.

The Attorney General argues that Plaintiffs have not shown "injuries to any particular voters." (Dkt. No. 67-2, 2). As stated in Plaintiffs' opening brief, the MCEB's actions have impeded the exercise of Plaintiffs' members' right to vote by increasing waiting times at polling locations, the hassle for voters with inflexible job, class schedules or childcare responsibilities, and thus the tangible and intangible costs of voting. The MCEB admits that both EIP and Election Day voters in Marion County are likely to experience longer lines and wait times than would otherwise exist if satellite sites had not been obstructed. (Dkt. No. 21, 12). Increasing the time it takes voters to vote is a burden on the right to vote between the two extremes of the *Anderson-Burdick* framework because it imposes "additional monetary costs on voters that must stand in line, and may even turn some voters away from voting at all." *See, e.g., Mich. State A.*

---

[1] The foregoing also refutes the Attorney General's mischaracterization that "Plaintiffs appear to claim that, though the board need not ever have approved of additional EIP locations, once the Board voted unanimously in 2008 to create additional EIP locations, that vote vested a constitutional right in voters who prefer those locations—a right that the Board could not later refuse to extend absent some overriding justification." (Dkt. No. 67-2, 2). As this Court has already recognized, "Plaintiffs' claims are not as to the constitutionality of § 3-11-10-26.3, but a challenge to the historic absence of satellite voting locations in Marion County." (Dkt. No. 50, 3 n. 2). Thus, even "if the MCEB were to unanimously vote not to establish any satellite voting locations, Plaintiffs' alleged constitutional rights claims would remain." *Id*. at 3.

*Philip Randolph Inst. v. Johnson,* 833 F.3d 656, 663-64 (6th Cir. 2017); *see also NAACP State Conference v. Cortes*, 591 F. Supp. 2d 757, 765 (E.D. Pa. 2008) (observing that one would have to be "blind to reality" not to recognize that "many individuals have a limited window of opportunity to go the polls due to jobs, child care and family responsibilities").

Plaintiff John Windle has submitted an affidavit that is illustrative of the burdens caused by having but a single location at the City-County Building for Marion County EIP absentee voting. Windle, a member of Plaintiff Common Cause Indiana, lives in Lawrence Township, Marion County, Indiana. (Windle Aff. ¶ 1). The 2016 general election was particularly important to him, and he wanted to vote early to ensure "that no unforeseen circumstances which might arise on Election Day itself could interfere with or prevent" him from voting. *Id*. at ¶ 3.

The City-County Building is 21 miles from his house. *Id*. at ¶ 4. When he arrived in the vicinity of the City-County Building, he discovered that the parking lot on Pearl Street designated by the MCEB for early voting was impossible to utilize. *Id*. at ¶¶ 5-7. That lot is "small and accessible only by a single narrow road." *Id*. at ¶ 7. Due to its "triangular shape and design . . . drivers cannot turn out of or around in any row they have entered but found full. A driver must back out the entire way in the face of oncoming vehicles which are soon to be themselves in the same predicament." *Id*. Many "frustrated drivers were exiting their vehicles and warning others to turn away" from the lot. *Id*. As it turns out, the lot was not exclusively reserved for early voters. *Id*. Instead, early voters shared the lot with the "same downtown workers who would habitually park there" and "continued to fill the lot just as before." *Id*. What he "estimated were 50-60 spots set aside for voters were actually only a handful of unreserved parking spaces." *Id*.

Windle witnessed the parking lot in a state of "absolute gridlock" on several occasions. *Id*. He was never able to secure a parking spot in that lot, nor was he able to park "along the one block stretch on the east side of Delaware Street immediately adjacent to the City County Building," which was also designated parking for early voters. *Id*. at ¶ 2. Windle "finally gave up and voted on Election Day" after "four or five attempts to vote early at the city-County Building." *Id*. at ¶ 8.

Julie Petrison had a similar experience voting early at the City-County Building. She is a registered voter living in Washington Township, Marion County, Indiana. (Petrison Aff. ¶ 1). In 2016, she was employed by CarDon & Associates as a registered nurse. *Id*. "During the week of the general election in November, 2016, [she] was scheduled to work from 3:00 p.m. Monday until 8:00 a.m. Tuesday, and then scheduled to return to work at 3:00 p.m. until 11:00 p.m. on that Tuesday, which was also Election Day." *Id*. at ¶ 2. As a result, she either had to forego sleep in order to vote on Election Day or vote early. *Id*. She "therefore decided to vote by early in-person absentee ballot at the only location available to do that at the time, which was the Clerk's office in the City-County Building." *Id*. She decided to make the trip to the City-County Building on the Thursday or Friday before Election Day. *Id*. at ¶ 3. It took her approximately 30 minutes to travel downtown from her residence in northern Washington Township. *Id*. She was unable to locate a parking lot where she could park for free, and, after 45 minutes of searching, she parked in the parking garage below the Circle Center Mall. *Id*. at ¶ 4.

She walked four or five blocks to the City-County Building, where she encountered a line going outside of the building for early voting. *Id*. at ¶ 5. She waited in line to vote for an hour. *Id*. While in line, other early voters told her they too could not find free parking and ended up paying $5 to $7 in parking fees. *Id*. As she exited the building after voting, she observed that the

line had grown, extending down the sidewalk half a block. *Id.* at ¶ 6. Her 77-year-old mother also wanted to vote early, but she decided not to due to having mobility issues and learning of the negative experience Petrison had at the City-County Building. *Id.* ¶ 7. In contrast, Petrison had a "very easy and convenient" experience voting early at North Central High School in 2008. *Id.* at ¶ 8.

Defendant Marion County Clerk Myla Eldridge validates Windle and Petrison's experiences. She testified that voters seeking to cast an absentee ballot at the City-County Building faced lines extending out of the building into the street and no public parking in the City County Building or around the perimeter. (Dkt No. 63-9, 18-19). In the Clerk's words, "[p]arking is not convenient downtown. There are really no accessible lots leading up to an election or surrounding the City-County Building." *Id.* at 19.

The report of Plaintiffs' expert, Dr. Bernard Fraga, provides a broader and more detailed picture, through statistical analysis, of the negative impact of the MCEB's failure to establish any satellite voting locations for EIP absentee voting. (Dkt. No. 63-8). Professor Fraga opines that "the Marion County Election Board's failure to approve any satellite voting locations [in 2012 and 2016] significantly decreased the proportion of voters voting early in-person absentee in Marion County . . . ." *Id.* at 9. The decline in EIP voting disproportionately fell upon African American voters, who were more likely as a group to utilize EIP voting than non-Hispanic white voters. *Id.* Given the frustrations and obstacles experienced by those seeking to vote at the City-County Building, it is altogether unsurprising that EIP absentee voting declined precipitously from 2008 after satellite locations were obstructed in 2012 and 2016. Thus, Plaintiffs have

presented ample evidence that their right to vote has been burdened by the absence of satellite voting locations in Marion County.[2]

### C. The burdens imposed on Plaintiffs by the MCEB's failure to establish satellite voting locations are discriminatory and require more rigorous judicial scrutiny.

Plaintiffs are not making a freestanding equal protection claim based on Plaintiffs' residency. Rather, as an additional argument within the confines of the *Anderson-Burdick* framework, Plaintiffs argue that the evidence they submitted from other election boards around the state shows that the lack of satellite voting locations in Marion County imposes discriminatory burdens that, therefore, cannot be justified by any "important regulatory interests" proffered by the MCEB. *See Harlan v. Scholz*, 866 F.3d 754, 760 (7th Cir. 2017). In other words, the MCEB's decisions are not entitled to the less rigorous scrutiny accorded to "reasonable, nondiscriminatory restrictions." *Id*. Plaintiffs analogize to the Supreme Court's geographic discrimination jurisprudence to provide further support for this argument. *See, e.g., Moore v. Ogilvie,* 394 U.S. 814 (1969) (holding that an election statute which discriminates against residents of heavily-populated counties in favor of residents of sparsely-populated counties violates the Equal Protection Clause of the Fourteenth Amendment).

Here, there is no relevant distinction between the voters of Lake, Allen, Hamilton, Boone, Hancock, Hendricks, and Johnson County and the voters of Marion County. Although the MCEB has offered no justification for the burdens it has imposed on the voters of Marion County by

---

[2] To the extent that the Attorney General is obliquely raising a standing argument, the MCEB admitted in its answer that Plaintiff Common Cause Indiana has organizational standing to bring this suit. (Dkt. No. 28, ¶¶ 4-6). It is also noteworthy that the Seventh Circuit did not question the standing of that same organization to challenge the constitutionality of an Indiana statute establishing procedures for electing judges in Marion County. *Common Cause Indiana v. Indiana Election Commission,* 800 F.3d 913 (7th Cir. 2015).

denying them satellite voting locations—which is dispositive of Plaintiffs' constitutional claims—Plaintiffs' evidence from other election boards around the state objectively establishes that there can be no "sufficiently weighty" justification for not permitting satellite voting locations in Marion County. *See Crawford,* 533 U.S. at 191 (quoting *Norman v. Reed,* 502 U.S. 279, 288-89 (1992)).

### D. The MCEB has failed to meet its burden of establishing a sufficiently weighty justification for the burdens it has imposed on the right to vote.

Having demonstrated that the absence of satellite voting locations in Marion County at least moderately burdens the right to vote of Marion County voters, the next step in the Court's analysis is to identify the "precise interests put forward" by the MCEB "as justifications for the burden imposed" by its failure or refusal to approve satellite voting locations. *Crawford*, 553 U.S. at 190 (quoting *Anderson*, 460 U.S. at 789). In its response the MCEB advanced no interests to justify those burdens. Instead it has chosen to take "no position on whether Plaintiffs have satisfied their burden to establish that they are likely to prevail on the merits of their First and Fourteenth Amendment claims." (Dkt. No. 66, 4). MCEB's decision not to put forth the precise interests justifying the burdens imposed by its failure to approve satellite voting sites for EIP absentee voting requires a finding that those burdens are without justification.[3] Just as a plaintiff who has not proved an essential element of his claim cannot withstand summary judgment, so too a defendant which fails to justify the burdens placed upon the right to vote cannot prevail in the face of a challenge under the First and Fourteenth Amendments. *See, e.g., Common Cause*

---

[3] Although the Attorney General uses much of its brief to argue in defense of the state interests behind the unanimity of the Satellite Voting Statute, as this Court has previously observed (Dkt. No. 50, 3), Plaintiffs are not challenging the constitutionality of the Satellite Voting Statute's unanimity requirement, only the burden imposed on their right to vote by the ongoing lack of satellite voting locations in Marion County.

11

*Indiana v. Indiana Election Comm'n,* 800 F.3d 913 (7th Cir. 2015); *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576-82 (7th Cir. 2014).

## II. The balance of harms favors the issuance of a preliminary injunction.

The MCEB argues that the balance of the harms weighs against issuing a preliminary injunction but only for the 2018 primary election. (Dkt. No. 66, 5). It does not make this argument for the 2018 general election and beyond. In the event that the Court issues a preliminary injunction with respect to the 2018 primary election, the MCEB requests that the Court enjoin it "to establish no more than two satellite sites for the 2018 primary election." *Id.*

The unconstitutional burden on Plaintiffs' and their members' right to vote constitutes irreparable harm. *Campbell v. Miller*, 373 F.3d 834, 840 (7th Cir. 2004) ("[w]hen an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary"); *Mich. St. A. Philip Randolph Instit. v. Johnson*, 833 F.3d at 669 ("A restriction on the fundamental right to vote therefore constitutes irreparable injury.") Under the second, "sliding scale," portion of the preliminary injunction analysis, "[t]he more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008). Because the MCEB does not contest the evidence supporting Plaintiffs' constitutional claims, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims, which results in a corresponding reduction of the degree to which the balance of the harms need weigh in their favor.

Plaintiffs have requested "no fewer than two satellite voting locations" for the 2018 primary election. (Dkt. No. 61). Preliminarily enjoining the MCEB to establish two satellite voting locations for the 2018 primary election strikes the appropriate balance between the

12

ongoing irreparable harm to Plaintiffs and any additional administrative burdens on the MCEB to establish the two satellite locations. Moreover, the MCEB does not claim it would be administratively impossible to establish two sites for the primary election if the Court issues the preliminary injunction Plaintiffs have requested.

**III.    Plaintiffs withdraw their request for a preliminary injunction on their claim under Section 2 of the Voting Rights Act.**

In order to expedite the Court's ruling on their motion for preliminary injunction by avoiding the need for an evidentiary hearing, and thereby to give the MCEB more time to administratively deal with any preliminary injunction that may issue, Plaintiffs withdraw their request for a preliminary injunction on their claim under Section 2 of the Voting Rights Act. If this matter proceeds after the preliminary injunction is resolved, Plaintiffs reserve the right to pursue their Section 2 claim at trial on the merits.

**IV.    Conclusion**

For the foregoing reasons and for those set forth in their opening brief, Plaintiffs respectfully request that the Court grant their motion for preliminary injunction.

Respectfully submitted,

/s/ *William R. Groth*
William R. Groth (7325-49)
Daniel Bowman (31691-49)
FILLENWARTH DENNERLINE
GROTH & TOWE LLP
429 East Vermont Street, Suite 200
Indianapolis, IN 46202
(317) 353-9363
wgroth@fdgtlaborlaw.com
dbowman@fdgtlaborlaw.com

*Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2018, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/William R. Groth
William R. Groth

FILLENWARTH DENNERLINE GROTH & TOWE, LLP
Suite 200, 429 East Vermont Street
Indianapolis, IN 46202
Telephone: (317) 353-9363
Fax: (317) 351-7232
E-mail: wgroth@fdgtlaborlaw.com