UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA; <br> NAACP, by its Greater Indianapolis Branch 3053, <br> and on behalf of its individual members; <br> DORIS A. McDOUGAL; and <br> JOHN WINDLE, <br> <br>      Plaintiffs, <br> <br>  v. <br> <br> MARION COUNTY ELECTION BOARD; and <br> KEITH JOHNSON, MELISSA <br> THOMPSON, and <br> MYRA A. ELDRIDGE, each in their official <br> capacities as members of the MARION <br> COUNTY ELECTION BOARD, <br> <br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CAUSE NO 1:17-cv-1388-SEB-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**JOINT MOTION TO APPROVE CONSENT DECREE**

**I. INTRODUCTION**

  Plaintiffs Common Cause Indiana, NAACP, by its Greater Indianapolis Branch 3053 and on behalf of its individual members, Doris A. McDougal, and John Windle commenced this action under 42 U.S.C. § 1983 alleging that Defendant Marion County Election Board's ("Board") failure to authorize satellite voting locations in Marion County for early, in-person absentee voting violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment, Section 2 of the Voting Rights Act, and Article 2, Section 1 of the Indiana Constitution.

  This Court entered a preliminary injunction on April 25, 2018, finding that Plaintiffs made a prima facie showing that the Election Board's failure to establish satellite offices after

2009 "severely burdens" the First and Fourteenth Amendment rights of Marion County voters. Dkt. 76 at 19-43. To fully and finally resolve Plaintiffs' remaining claims, the parties now ask this Court to approve and enter the attached Consent Decree.[1]

## II. BASIS FOR ENTRY OF DECREE

The legal and factual basis for entry of the Consent Decree is set forth within the decree itself (Ex. 1 at 2-4), briefly summarized here.

Indiana law allows for local election boards to expand the time allotted for voting beyond Election Day. Ind. Code § 3-11-10-26.3(c). For example, the circuit court clerk's office is required to be open for early voting no less than seven hours on each of the two Saturdays preceding Election Day. I.C. § 3-11-10-26(e), (g), and (h). Indiana Code § 3-11-10-26.3 (the "Satellite Voting Statute") authorizes county election boards to approve satellite voting offices by unanimous vote. The Satellite Voting Statute lacks any statewide standards for determining whether to approve satellite voting offices. For many voters, in-person voting (either early or on Election Day) is their only option. Mail-in absentee voting is available only to voters who declare under penalties of perjury that they meet one of thirteen criteria, such as absence from the county on Election Day, disability, or sex offender status. Ind. Code § 3-11-10-24(a).

In 2008, the Marion County Election Board (the "Board") approved a resolution to establish satellite voting offices in an effort to create opportunities for Marion County voters to

---

[1] The State of Indiana has taken an interest in this case. Well before entry of the preliminary injunction, the Court granted the State conditional intervenor status so that it could object to any settlement between the parties. Dkt. 40 at 2. While the parties will respond to any such objections in due course, they respectfully submit that in light of the preliminary injunction and the Court's denial of *amicus curiae* status with respect to that briefing, no further objections from the State are appropriate. *See* Dkt. 76 at 18, 25, 47.

vote in person prior to Election Day. Nearly twenty percent of the votes cast in Marion County during that election were early in-person absentee.

Despite available funding, the Board has not approved a resolution by unanimous vote to establish satellite voting offices in a federal election year since 2008, or in any election since 2009. Since that time, Marion County voters seeking to cast an in-person, absentee ballot prior to Election Day were only able to vote at the Marion County Clerk's office, which is located in the center of downtown Indianapolis, has little or no free parking, and can take two or more hours round-trip by public transportation.

During the same period, the counties contiguous to Marion County, including Hamilton, Hendricks, Boone, Hancock, and Johnson, approved creation of satellite voting offices. The contiguous counties in which voters could vote early in-person experienced an increase in voter turnout from 2008 to 2016. Marion County experienced a decrease.

Marion County has the largest percentage of African Americans (28%) in Indiana. According to the analysis performed by Plaintiffs' expert, Dr. Bernard Fraga, African American voters in Marion County are more likely than other voters to utilize early voting. Dr. Fraga's analysis demonstrates that the elimination of satellite locations for early, in person, absentee voting has disproportionately impacted African-American voters in Marion County, and that this disproportionate burden was, in part, caused by or linked to social and historical conditions that have or currently produce discrimination against African-American voters to deny African American voters in Marion County an equal opportunity to participate in the electoral process and to elect candidates of their choice.

Similarly, the county-by-county discretion granted by the Satellite Voting Statute permits significantly greater opportunities to participate in the political process for voters in every

county. However, special voting privileges (satellite voting offices for early, in-person absentee voting) granted to voters outside Marion County have not been accorded to similarly situated Marion County voters because the Board has failed to unanimously support the establishment of satellite offices.

The parties have agreed that entry of a Consent Decree is an appropriate remedy in light of the Court's finding that Plaintiffs have met a prima facie burden of likelihood of success on the merits of their legal and constitutional claims. The material terms of the parties' proposed Consent Decree contemplate that: the Board shall establish a minimum number of two (2) satellite offices for each subsequent primary election, and five (5) satellite offices for the 2018 general election and each subsequent general and municipal election; the Board shall retain the discretion to select the locations and operating hours of the satellite offices; and in making those determinations, the Board shall consider factors such as available locations, cost of available locations, access to public transportation to selected locations, population distribution, historical voter turnout data, and staffing needs.

### III. ENTRY OF A DECREE IS APPROPRIATE UNDER THE CIRCUMSTANCES

"A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *Lopez-Aguilar v. Marion County Sheriff's Dep't, et al.*, 296 F.Supp.3d 959, 967-68 (S.D. Ind. Nov. 7, 2017) (quoting *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002)). The authority of the Court to enter a judgment under a consent decree arises out of the agreement of the parties and the statute or other federal interest that the decree is intended to enforce. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986); *Evans v. City of Chicago*, 10 F.3d 474, 478 (7th Cir. 1993) (quoting *Firefighters v. Stotts*, 467 U.S. 561, 576 n. 9 (1984)). A district court must approve a proposed

consent decree if its terms are sufficiently connected to the underlying suit and if it is otherwise fair and reasonable. *Lopez-Aguilar*, 296 F.Supp.3d at 968.

In reviewing a proposed consent decree, the court begins from "the federal policy encouraging settlement." *Id.* (quoting *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011)). A decree "must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

The Consent Decree sought by this joint motion arises from, and will resolve, federal claims within the court's subject-matter jurisdiction arising under the U.S. Constitution and federal law. *See* 28 U.S.C. §§ 1331, 1343(a)(3), and 1357 and 42 U.S.C. §§ 1983 and 1988. The decree also resolves claims within the general scope of the case alleged by Plaintiff in its pleading, namely, the alleged violation of the Fourteenth Amendment of the U.S. Constitution and Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a). The decree will further the objectives of the law upon which Plaintiffs' claims were based by according voters in Marion County with greater opportunities to participate in the political process already granted voters in every other county in Indiana.

The Court also "must determine whether a proposed decree is lawful, fair, reasonable, and adequate." *Lopez-Aguilar*, 296 F.Supp.3d at 968 (quoting *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). "The district court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate[,]" and should be "chary" of so finding. *Id.* (internal citations omitted). The Court must consider

> a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense

> of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and, the stage of the proceedings and the amount of discovery already undertaken at the time of the settlement.

*Id.*

Voter access relates to the additional requirement that the decree must adequately protect and be consistent with the public interest. *Lopez-Aguilar*, 296 F.Supp.3d at 981. The public interest is served by eliminating application of a law that is disproportionately impacting African Americans in Marion County.

Finally, the terms within the decree are judicially manageable. *Id*. It requires establishment of satellite offices and vests continuing discretion with the Election Board to manage the details. It limits the basis on which parties may lodge future challenges. Therefore, there are "no grounds to anticipate that complex judicial management will be required to enforce its terms." *Id*.

For the foregoing reasons, the parties respectfully request that the Court enter the attached Consent Decree.

For Plaintiffs:

 /s/ William R. Groth
William R. Groth
Daniel Bowman
FILLENWARTH DENNERLINE GROTH & TOWE LLP
429 East Vermont Street, Suite 200
Indianapolis, IN 46202
(317) 353-9363
wgroth@fdgtlaborlaw.com
dbowman@fdgtlaborlaw.com

For Defendants:

 /s/ A. Scott Chinn
A. Scott Chinn
Anne K. Ricchiuto
Daniel E. Pulliam
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, Indiana 46204
(317) 237-0300
Scott.Chinn@FaegreBD.com
Anne.Ricchiuto@FaegreBD.com
Daniel.Pulliam@FaegreBD.com

           */s/ Donald E. Morgan*
Andrew J. Mallon
Donald E. Morgan
City of Indianapolis
Office of Corporation Counsel
200 East Washington Street, Suite 1601
Indianapolis, IN 46204
Phone: 317-327-4055
donald.morgan@indy.gov
andy.mallon@indy.gov